Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio




# MEMORANDUM OPINION

No. 04-11-00046-CR

Michael **MILLER**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 437th Judicial District Court, Bexar County, Texas
Trial Court No. 2009CR4546
Honorable Lori I. Valenzuela, Judge Presiding

Opinion by:   Steven C. Hilbig, Justice

Sitting:      Karen Angelini, Justice
              Sandee Bryan Marion, Justice
              Steven C. Hilbig, Justice

Delivered and Filed:  November 9, 2011

AFFIRMED

Michael Miller was found guilty by the trial court of aggravated assault and sentenced to twenty years in prison. On appeal, Miller challenges the legal sufficiency of the evidence to support the trial court's implicit rejection of his self-defense claim. We affirm the judgment.

### STANDARD OF REVIEW

When a defendant produces some evidence raising the issue of self-defense, the State bears the burden of proving beyond a reasonable doubt that the defendant's actions were not

justified. *Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991). If the defendant is found guilty, the trier of fact is considered to have made an implicit finding rejecting the defense. *Id.*; *Miranda v. State*, No. 04-10-00015-CR, 2011 WL 1496539, *5 (Tex. App.—San Antonio Apr. 20, 2011, no pet.). When the defendant challenges the legal sufficiency of the evidence to support the implicit rejection of the defense, we do not look to whether the State presented evidence that refuted the self-defense testimony; rather, we review the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt and against appellant on the self-defense issue beyond a reasonable doubt. *Saxton*, 804 S.W.2d at 914; *Smith v. State*, No. 02-09-00394-CR, 2011 WL 2436774, at *5 (Tex. App.—Fort Worth June 16, 2011, no pet.); *Miranda*, 2011 WL 1496539, at *5. In our review, we defer to the fact finder's determination of the weight and credibility of the evidence and to its resolution of conflicts in the evidence. *Smith*, 2011 WL 2436774, at *4.

## DISCUSSION

Miller was charged with intentionally and knowingly causing serious bodily injury to Jay Maxfield. Miller and Maxfield were neighbors who had an ongoing dispute about an easement that runs across Miller's property. Maxfield must use the easement to access his own property. The charge arose from a fight between the men on November 1, 2008, that resulted in Maxfield being hospitalized with severe injuries. Maxfield alleged the beating was unprovoked; Miller asserted he acted in self-defense.

Maxfield testified he was cutting weeds along the easement one Sunday morning, when he noticed the "No Trespassing" sign on the fence was bent. He heard someone yelling at him as he was returning to his tractor after fixing the sign. Maxfield testified he turned and saw Miller

walk out of his gate and onto the easement. Miller started berating him and Maxfield responded that he did not want to argue with Miller about the easement. Maxfield testified he turned to leave and Miller grabbed him. Maxfield shoved him away and Miller kicked Maxfield's feet out from underneath him. Maxfield fell and the back of his head hit the ground. Maxfield testified that Miller yelled to someone in his family to call the sheriff's department and then whispered to Maxfield that he hoped it would take two hours for the sheriff to arrive so he could beat him for two hours. According to Maxfield, Miller held him down, beat him about the head, and choked him until a deputy arrived. Maxfield stated he did not move from the easement where he fell until the ambulance took him. Maxfield also denied he had gone onto Miller's property or thrown any blows.

Bexar County Sheriff's Department Deputy Estaban Lopez testified he responded to the call. When he arrived, Miller had Maxfield pinned down in the middle of the easement. Deputy Lopez testified Maxfield was bloody and had "traumatic injuries," and Miller may have had some injuries to his hands, but otherwise did not appear injured. Miller admitted he had struck Maxfield in the face, and the Deputy determined the attack had taken place in the roadway easement outside of Miller's property.

Maxfield was taken to the hospital by ambulance, where he was treated for bleeding in his brain. In addition, Maxfield had extensive bruising and an injury to one of his eye sockets for which he requires surgery to implant a steel plate. Maxfield suffered permanent loss of forty-seven percent of his hearing in one ear. And, as a result of being choked, Maxfield's voice box was damaged, which affects his ability to speak.

Miller testified he walked out of his house to go close his gate when he saw Maxfield on his property. According to Miller, Maxfield was not on the easement, but was on the other side

of the gate, blocking Miller's ability to close it. Miller testified Maxfield began threatening him and would not leave the property. Miller testified that while he was holding the gate, Maxfield kicked it, "re-breaking" Miller's wrist, which had been broken ten days earlier. Miller stated that Maxfield, who is much larger than he, attacked him over the fence, repeatedly hitting him on the top and back of his head. Miller testified that when Maxfield started slowing down, Miller began to hit back. They moved away from the gate and after some scuffling, Maxfield fell to the ground. Miller stated he pinned Maxfield to the ground and started trying to calm him down. According to Miller, the men were still on his property. Miller testified that after the police were called, Maxfield "crawled" twenty feet on his back out to the easement with Miller on top of him. Miller's son testified that when he went outside before the police were called, the men were on the ground on the Millers' property, next to the gate. Miller did not seek any medical treatment.

A neighbor testified he arrived at the scene of the fight after the police arrived. He testified he saw a pool of blood in the road. There was no evidence of any crawl marks or blood trails from Miller's property to the road.

Miller's sole argument is that "Miller's evidence of self-defense was not refuted beyond a reasonable doubt." However, the State did not have a burden to affirmatively produce evidence refuting the self-defense claim. *Saxton*, 804 S.W.2d at 913. Moreover, the trial court, as the sole judge of the credibility of the witnesses, was not required to believe Miller's testimony. *See id.* at 913-14. We presume the trial court resolved any conflicts in the evidence in favor of the prosecution and must defer to that determination. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Viewing the evidence in the light most favorable to the verdict, the trial court rationally could have found the essential elements of aggravated assault beyond a reasonable

doubt and could have found against Miller on the self-defense issue beyond a reasonable doubt. We therefore affirm the trial court's judgment.

Steven C. Hilbig, Justice

DO NOT PUBLISH